UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN AOUN,

    Plaintiff,

v.

GEORGE DARANY,

    Defendant.

Case No. 25-11191
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION [13]**

Hassan Aoun wants to run for mayor of Dearborn. But his felony convictions make him ineligible under the city charter. Believing the provision unconstitutional, Aoun filed suit against Dearborn City Clerk George Darany. Now, before absentee voting begins on June 26, 2025, Aoun moves to enjoin Darany from "denying [his] application to run for the public office of mayor." (ECF No. 13.) But he has provided no legitimate basis to do so. Thus, the Court DENIES Aoun's emergency motion for preliminary injunction.

I.

The City of Dearborn will vote on mayoral candidates in its August primary election. (ECF No. 1, PageID.9–11.) Hassan Aoun wants his name on the ballot. So in November of 2024, he obtained the requisite number of signatures, submitted his paperwork, and awaited confirmation of his candidacy. (*Id.* at PageID.14–18.) But on December 26, 2024, Dearborn City Clerk George Darany sent Aoun a letter informing

him that he was "ineligible to be certified as a candidate for Dearborn Mayor." (*Id.* at PageID.27.) Aoun's criminal record search had revealed three felony convictions in 2009 and 2012. (*Id.*; *see* ECF No. 17-2 (Aoun's criminal history file per the Michigan State Police Internet Criminal History Access Tool ("ICHAT")).) And, explained Darany, Section 6.2 of the Dearborn city charter prohibits anyone previously convicted of a felony from "becom[ing] a candidate or hold[ing] elective office." (ECF No. 1, PageID.27 (quoting Dearborn, Mich., Charter § 6.2).)

Eleven days after receiving the disqualification letter, Aoun sued Darany in state court. *See Aoun v. Darany*, No. 25-000218-cz (Wayne Cnty. Cir. Ct. filed Jan. 6, 2025), https://perma.cc/8GZZ-6875. He filed a "complaint and emergency motion for temporary restraining order and preliminary injunction" (ECF No. 17-4) asserting three federal claims—violations of his First Amendment "rights to political participation and association" (*id.* at PageID.276) and Fourteenth Amendment rights to equal protection and due process (*id.* at PageID.275–276)—and one state law claim of "unauthorized action under Michigan law" (*id.* at PageID.275 ("Defendant's criminal background check on Plaintiff exceeded the scope of duties outlined in MCL § 168.558, which does not authorize clerks to conduct background checks.")). He also moved for a permanent injunction, asserting that Section 6.2 of the Dearborn charter violated the Michigan constitution. (ECF No. 17-5, PageID.294–299; *see* ECF No. 1, PageID.5.) On April 17, 2025, following a hearing, Chief Judge Patricia P. Fresard of the Wayne County Circuit Court denied Aoun's motions. (ECF No. 17-6.) The court focused on whether the city charter was consistent with the Michigan constitution

2

and did not reach Aoun's federal constitutional claims.[1] (*See* ECF No. 15-2, PageID.224–228.) The parties eventually voluntarily dismissed the state court case. (ECF No. 17, PageID.243 (citing ECF No. 17-10)); *see Aoun v. Darany*, No. 25-000218-cz (Wayne Cnty. Cir. Ct. May 30, 2025), https://perma.cc/8GZZ-6875.

A few days later, on April 25, 2025, Aoun filed suit in this Court. (ECF No. 1.) And on May 21, 2025, he filed this emergency motion for preliminary injunction. (ECF No. 13.) That motion is fully briefed (ECF Nos. 17, 18) and raises purely legal issues, so no further argument is needed, *see Caspar v. Snyder*, 77 F. Supp. 3d 616, 639 (E.D. Mich. 2015) ("[N]o evidentiary hearing is required for a preliminary injunction when factual matters are not in material dispute."); E.D. Mich. LR 7.1(f).

## II.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) ("[I]njunctive relief [i]s an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Erard v. Johnson*, 905 F. Supp. 2d 782, 796 (E.D. Mich. 2012) ("Plaintiff must carry a heavy burden to demonstrate

---

[1] The court's order did not lay out its reasoning, instead referencing "the reasons stated on the record." (ECF No. 17-6, PageID.311.) But the hearing transcript (ECF No. 15-2), along with the parties' characterization of the court's conclusions (ECF No. 1, PageID.5–6; ECF No. 17, PageID.248–249), suggest that Chief Judge Fresard denied Aoun's motions on the basis that there was no conflict between the city charter and the Michigan constitution.

entitlement to a preliminary injunction."). The Court considers four factors in determining whether to issue a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007); *see also Six Clinics Holding Corp., II v. Cafcomp Sys.*, 119 F.3d 393, 400 (6th Cir. 1997) ("The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met.").

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 121 (6th Cir. 2019) (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)). And "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)); *see Thompson v. Dewine*, 976 F.3d 610, 615 (6th Cir. 2020).

Aoun falls far short of demonstrating entitlement to a preliminary injunction.

For starters, his arguments are skeletal at best. Aoun asserts one count of "violation of 28 [sic] U.S.C. 1983" in his complaint (ECF No. 1, PageID.6), then cursorily references the Fourth and Fourteenth Amendments (*id.* at PageID.4). He

4

adds a brief reference to the First Amendment (not mentioned in his complaint) to his preliminary injunction motion (ECF No. 13, PageID.169–172) and drops the Fourth Amendment in his reply brief (ECF No. 18, PageID.350). As Darany puts it, "[w]hile Plaintiff alleges that his disqualification violated the 1st and 14th Amendments and 42 U.S.C. §1983, he does not indicate how or why his disqualification even implicated those laws, let alone violated them." (ECF No. 17, PageID.246); *see Fouts v. Warren City Council* ("*Fouts I*"), No. 23-1826, 2023 U.S. App. LEXIS 26448, at *6–7 (6th Cir. Oct. 4, 2023) ("Plaintiff has not demonstrated that he is likely to succeed on appeal. As an initial matter, Plaintiff's motion to expedite contains no legal arguments as to the merits of his appeal, other than emphasizing the importance of the constitutional right to vote and Plaintiff's right to run as a candidate for office."). And as for his Fourth Amendment claim, Aoun shows absolutely no likelihood of success on the merits. He merely lists the Fourth Amendment in his complaint and preliminary injunction motion (before abandoning the claim in his reply brief) but says nothing about how the Dearborn charter provision could possibly constitute an unreasonable search or seizure.[2] Nor can the Court conceive of any possible basis for a Fourth Amendment challenge to the provision.

Beyond naming the constitutional amendments, the substantive right Aoun repeatedly cites is "[t]he right to run for public office." (ECF No. 13, PageID.172; *see*

---

[2] The Court conducted a telephonic status conference with the parties to set a briefing schedule and plaintiff's counsel acknowledged that the facts of this case do not implicate any Fourth Amendment concerns.

5

ECF No. 1, PageID.6.) As the Court explains below, there is no such constitutional right. (*See* ECF No. 17, PageID.246 ("Plaintiff's allegation that the United States Constitution provides him with the right to run for mayor of a city is not based in fact or law, and like with his other allegations, he fails to provide any support for such a contention.")); *Fouts v. Warren City Council* ("*Fouts II*"), 97 F.4th 459, 466 (6th Cir. 2024) ("[L]aws[] which only restrict the class of individuals eligible to run for office[] do not burden a fundamental right because there is no fundamental right to run for office."). And Aoun provides neither support for the existence of such a right nor even the relevant legal standards the Court should apply to his constitutional claims. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (concluding that plaintiffs' failure to explain claim elements, among other things, showed that plaintiffs "d[id] not seriously intend to pursue" state constitutional claim).

"[I]t is not for the court to search the record and construct arguments. Parties must do that for themselves." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (declining to consider plaintiffs' arguments when they left "it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them"). "Where a party fails to explain an argument and supply authority . . . a court need not attempt to supply the missing information." *Lyngaas v. Curaden AG*, No. 17-10910, 2021 WL 6049428, at *3 (E.D. Mich. Dec. 21, 2021); *see also McPherson*, 125 F.3d at 995–96 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court

6

to . . . put flesh on its bones." (omission in original)). The entirety of Aoun's likelihood-of-success argument is as follows:

> Defendant's prohibition against felons running for office is unreasonable and conflicts with federal and state law and the majority of jurisdictions in the country.
>
> While states may impose reasonable restrictions on candidacy, those restrictions must be justified by compelling state interests and be narrowly tailored. *Anderson v. Celebrezze*, 460 US. 780, 786-87 (1983); *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). The right to run for political office is closely intertwined with the rights to vote and participate in democratic governance.
>
> Plaintiff, having completed all sentencing requirements, poses no threat to the integrity of public office. His blanket exclusion violates the principle of individualized assessment required under *Richardson v. Ramirez*, 418 U.S. 24 (1974), which upheld some felony disenfranchisement laws but emphasized states' discretion must still comply with Equal Protection standards.
>
> In this case, Defendant already knew that its provision was in conflict with state law. Citizens of Dearborn wanted the provision changed to allow individuals with felony records to run for public office. In 2023, the city's Charter Commission unanimously approved a provision that amended the ordinance on eligibility to run for office in Dearborn (See Exhibit "H"). However, the provision was never enacted by the city.

(ECF No. 13, PageID.172–173.)

Start with Aoun's assertion that "Defendant's prohibition against felons running for office is unreasonable and conflicts with federal and state law and the majority of jurisdictions in the country." (*Id.* at PageID.172.) Aoun fails to cite a single "federal [or] state law"—or case—that supports the proposition that the city charter section is unconstitutional. Meanwhile, as explained below, the overwhelming weight of authority supports the constitutionality of the provision. *See, e.g., Fouts II*, 97 F.4th at 466 ("[T]here is no fundamental right to run for office.").

Next, Aoun says that "[w]hile states may impose reasonable restrictions on candidacy, those restrictions must be justified by compelling state interests and be narrowly tailored." (ECF No. 13, PageID.172.) But that is an inaccurate statement of the law.

"Restrictions on candidacy" do not automatically trigger strict scrutiny. *See, e.g.*, *Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'"); *Kowall v. Benson*, 18 F.4th 542, 546–47 (6th Cir. 2021) ("Courts use *Anderson-Burdick*'s sliding-scale framework to assess election-related ballot-access and freedom-of-association claims." (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1982))). Indeed, restrictions that simply define "the class of individuals eligible to run for office," *Fouts II*, 97 F.4th at 466, i.e., "set qualifications for [a state's] officeholders . . . [r]ather than keeping eligible candidates off the ballot," do not trigger heightened scrutiny, *Kowall*, 18 F.4th at 547; *see Burrell v. Tipton Cnty. Election Comm'n*, No. 22-5867, 2022 WL 10225146, at *5 (6th Cir. Oct. 18, 2022) ("Although laws creating qualifications for candidates will always create some distant impact on available voting choices, would-be candidates cannot reframe every ballot limitation as a voting rights infringement.").

The Sixth Circuit draws this distinction between impermissible ballot-access restrictions and permissible candidate eligibility requirements because, again, there is no fundamental right to run for office. *Fouts II*, 97 F.4th at 466 (citing *Kowall*, 18

8

F.4th at 547; *Clements*, 457 U.S. at 963); *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989). So-called ballot-access restrictions—such as candidate signature requirements or early filing deadlines—"burden fundamental rights, such as the right of eligible voters to cast their votes effectively" or to freely associate for political ends, because they impose "barriers for otherwise qualified candidates to be placed on the ballot" or "otherwise limit voters from casting their votes for eligible candidates." *Fouts II*, 97 F.4th at 466; *see Kowall*, 18 F.4th at 547 (citing *Anderson*, 460 U.S. at 787–88; *Burdick*, 504 U.S. at 433); *Graveline v. Benson*, 992 F.3d 524, 535–37 (6th Cir. 2021). In contrast, laws that set candidate qualifications, such as term limit laws, "only restrict the class of individuals eligible to run for office [and thus] do not burden a fundamental right because there is no fundamental right to run for office." *Fouts II*, 97 F.4th at 466. Such laws also "implicate . . . the State's power to prescribe qualifications for its officeholders" and "to structure its government." *Cits. for Legis. Choice v. Miller*, 144 F.3d 916, 924 (6th Cir. 1998); *see Fouts II*, 97 F.4th at 467 (citing "a state's interest in structuring its own government" in upholding challenged city charter provision as constitutional). "Restrictions on who may hold state elective office 'lie at the heart of representative government.'" *Kowall*, 18 F.4th at 548 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 462–63 (1991)).

"With no fundamental right allegedly impaired, [this Court] must resort to rational basis review." *Fouts II*, 97 F.4th at 466. Indeed, "[c]ourts routinely apply rational basis when officeholders' qualifications are at stake." *Kowall*, 18 F.4th at 548 (collecting cases); *see id.* at 547 n.2 ("Because qualifications for office don't restrict

9

ballot access, *Anderson-Burdick* is unworkable when it comes to term-limit challenges."); *Fouts I*, 2023 U.S. App. LEXIS 26448, at *8 ("Plaintiff's challenge . . . is a challenge to [the city's] enacted eligibility requirements for the mayoral ballot, and rational basis review accordingly applies."); *Conyers v. Garrett*, No. 22-11152, 2022 WL 1913598, at *11 (E.D. Mich. June 3, 2022) (applying rational basis review to First Amendment right-to-association challenge to Michigan constitution's exclusion from elective office of people with certain prior felony convictions, i.e., Mich. Const. art. XI, § 8), *aff'd on other grounds*, No. 22-1494, 2022 WL 2081475 (6th Cir. June 10, 2022) (per curiam).

Aoun does not show that his challenge to the Dearborn charter provision is likely to succeed under rational basis review. Under this standard, the government "ha[s] no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Schellenberg v. Township of Bingham*, 436 F. App'x 587, 593 (6th Cir. 2011). The plaintiff generally bears the "heavy" burden of showing that the government action is not rationally related to a legitimate government interest. *See Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018) ("[Rational basis review] places a heavy burden on [Plaintiff] to show there is *no rational basis* for the classification; by the same token, Defendants need not offer any rational basis so long as this Court can conceive of one." (internal quotation marks omitted)).

Because Aoun maintains that the Dearborn eligibility restriction is subject to strict scrutiny, he altogether fails to negate the provision's presumptive rationality.

10

He contends that Dearborn imposes a "blanket exclusion" but that he "poses no threat to the integrity of public office."[3] (ECF No. 13, PageID.172.) He adds that "Dearborn's categorical disqualification lacks any narrowly tailored justification. There is no evidence that [his] felony history impairs his ability to serve as mayor."[4] (*Id.* at PageID.174.) But, again, Dearborn's candidate qualifications do not need to be narrowly tailored. And Darany need not defend the charter provision. Indeed, when courts apply rational basis review to "reasonable nondiscriminatory restrictions" on ballot-access and freedom-of-association rights (i.e., under *Anderson-Burdick*), "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788). So too here. Dearborn "has several legitimate government interests in enacting [officeholder

---

[3] In support of this assertion, Aoun cites *Richardson v. Ramirez*, 418 U.S. 24 (1974), which he says "upheld some felony disenfranchisement laws but emphasized states' discretion must still comply with Equal Protection standards." (ECF No. 13, PageID.172–173.) He further asserts that the city charter "violates the principle of individualized assessment required under *Richardson*." (*Id.* at PageID.172.) But Aoun does not explain what "principle" he means, nor does he even provide a pincite directing the Court to any relevant parts of the case. Aoun also fails to defend the assumption that "felony disenfranchisement laws," which burden the fundamental right to vote, bear any relation to candidate qualifications, which implicate no such fundamental right. Nor does he dispute that all candidates with felony convictions are treated the same.

[4] Aoun again cites cases with no obvious relevance. He asserts that "[c]ourts have rejected overbroad restrictions on candidacy based on criminal records," then proceeds to cite two inapposite cases—*Johnson v. Martin*, 68 F. Supp. 2d 1126 (N.D. Iowa 1999), in which the Northern District of Iowa "struck down a policy barring ex-felons from *state employment* where there was no individualized assessment," and *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750 (7th Cir. 2002), in which the Seventh Circuit "held that a lifetime bar to a *professional license* violated Equal Protection." (ECF No. 13, PageID.174 (emphasis added).) Aoun fails to acknowledge that these cases involve distinct contexts, let alone show why they would be instructive here.

11

qualifications]. First among them? Its sovereign interest in structuring its government as it sees fit." *Kowall*, 18 F.4th at 548; *see Fouts II*, 97 F.4th at 467 (citing legitimate interests supporting term limit laws, including "a state's interest in structuring its own government," in upholding challenged city charter provision). Also on the list could be a desire to uphold the integrity of public office and maintain public trust. *See, e.g.*, *Smith v. United States*, No. 08-262, 2008 U.S. Dist. LEXIS 112316, at *2 (E.D. Wis. Apr. 2, 2008) ("If, as Smith alleges, he is prevented from running for office by virtue of his prior conviction, this is rationally related to the legitimate governmental interest of protecting the integrity of the local political processes.").

Even if something more than rational basis review were applicable, Aoun still fails to show a likelihood of success on the merits. *See, e.g.*, *Burrell v. Tipton Cnty. Election Comm'n*, No. 22-02631, 2022 WL 4485172, at *4 (W.D. Tenn. Sept. 27, 2022) (denying preliminary injunctive relief and concluding that, "[w]hether under rational basis or intermediate review, the [candidate] residency requirement would survive due to the government's legitimate interest and the relatively small burden placed on [plaintiff's] rights"), *aff'd*, 2022 WL 10225146, at *5 ("Candidacy qualifications like reasonable term limits, age requirements, or durational residency requirements generally do not rise to the level of a constitutional claim. [Plaintiff] has shown no likelihood of success on his right-to-vote claim."); 80 Mich. Op. Att'y Gen. 594 (1980), 1980 Mich. AG LEXIS 191, at *2 (advising that city charter provisions barring

persons convicted of felonies from eligibility for public office would not be unconstitutional even under the "compelling state interest test").

To the extent it requires separate analysis, Aoun is likewise unlikely to succeed on the merits of his Fourteenth Amendment equal protection claim. *See Mays v. LaRose*, 951 F.3d 775, 783 n.4 (6th Cir. 2020). Because the city charter provision does not burden any fundamental rights, Aoun would have to show that it "targets a suspect class" or "intentionally treats one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023); *cf. Obama for Am.*, 697 F.3d at 429 ("If a plaintiff alleges only that a state treated him or her differently than similarly situated voters, without a corresponding burden on the fundamental right to vote, a straightforward rational basis standard of review should be used."). Aoun does not contend that the city charter provision targets a suspect class, nor does he provide any case law that suggests people with felony convictions comprise a suspect class. *See People v. Chapman*, No. 305465, 2012 WL 4465160, at *4 (Mich. Ct. App. Sept. 27, 2012) ("There is no case law to suggest that felons are a suspect class."); *United States v. Miller*, 604 F. Supp. 2d 1162, 1172 (W.D. Tenn. 2009) ("To the extent the Defendant asserts that felons should be treated as a suspect class under the Equal Protection Clause, the Court rejects this notion and has found no law to support it." (citing cases across jurisdictions)). Further, as Darany explains, "[t]he charter provision in question applies equally to all individuals with felony convictions." (ECF No. 17, PageID.257.) That leaves only intentional discrimination, which Aoun does not

13

assert—and even if he did, Dearborn's qualification survives rational basis review, as already explained. *See Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) ("To withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest."); *Fouts II*, 97 F.4th at 471 ("[E]ven if Fouts had sufficiently alleged that Defendants intentionally discriminated against him by proposing and enforcing the term-limit amendment to bar him from running for office, as stated, the term-limit amendment clearly passes rational basis review.").

Aoun further contends that "Defendant already knew that its provision was in conflict with state law." (ECF No. 13, PageID.173.) According to Aoun, "Citizens of Dearborn wanted the provision changed to allow individuals with felony records to run for public office. In 2023, the city's Charter Commission unanimously approved a provision that amended the ordinance on eligibility to run for office in Dearborn. However, the provision was never enacted by the city."[5] (*Id.*) Those arguments do not follow—either from each other or from the facts and the law at issue.

The Michigan constitution itself places candidacy restrictions on people with prior felony convictions. It specifically bars from public office anyone convicted in the

---

[5] Throughout his filings, Aoun repeatedly asserts in passing that Dearborn's ordinance violates the Michigan constitution. (*See* ECF No. 1, PageID.5–6; ECF No. 13, PageID.163–164, 170, 172.) According to Darany, Aoun asserts a purely state law claim such that the Court lacks subject matter jurisdiction. (ECF No. 17, PageID.244–248.) Although skeletal, Aoun's federal claims do confer federal question jurisdiction such that the Court will exercise supplemental jurisdiction over the state law claim.

14

last 20 years of a felony involving dishonesty "related to the person's official capacity while the person was holding any elective office." Mich. Const. art. XI, § 8. True, this is narrower than the Dearborn charter. But the same provision in Michigan's constitution then expressly allows for additional candidate qualifications, providing that "[t]his requirement is in addition to any other qualification required under this constitution or by law." *Id.* And the Michigan "Home Rule Act" requires each city charter to set further qualifications for city officers. *See* Mich. Comp. Laws § 117.3(d) ("Each city charter shall provide for . . . [t]he qualifications, duties, and compensation of the city's officers."). Section 6.2 of the Dearborn charter is one such candidate qualification. It states: "No person shall become a candidate or hold elective office under this charter unless that person . . . has never been convicted of a felony . . . ." Dearborn, Mich., Charter § 6.2. In other words, the Michigan constitution sets the floor with its prohibition on people with certain felony convictions holding elective office, and it expressly incorporates additional candidate qualifications imposed by law. *See* Mich. Const. art. XI, § 8. The Michigan Home Rule Act in turn requires each city charter to establish further candidate qualifications, *see* Mich. Comp. Laws § 117.3(d), which Dearborn has done here, *see* Dearborn, Mich., Charter § 6.2.

Aoun largely ignores the plain text of both the Michigan constitution and Home Rule Act in insisting that the city charter provision "conflict[s] with state law." (ECF No. 13, PageID.173.) He provides no support for that proposition, and he fails to

15

address clear Michigan law—both statutory and constitutional—to the contrary.[6] He points only to the Charter Commission's proposed amendment to the at-issue charter provision—which fails to demonstrate either that "Defendant already knew that its provision was in conflict with state law" or that "[c]itizens of Dearborn wanted the provision changed to allow individuals with felony records to run for public office." (*Id.*)

True, in 2023, the nine-person Dearborn City Charter Commission unanimously voted to propose a revised charter provision to Dearborn voters, which would have eliminated the categorical prohibition on felon candidates. (*Id.* at PageID.199–201.) But neither the Commission nor Darany said the existing charter provision was unconstitutional. And the Commission's unanimous roll call vote did not represent what "[c]itizens of Dearborn wanted"—the opposite; when the proposed amendment was placed on the ballot during the August 2024 primary elections, the citizens of Dearborn voted it down. (ECF No. 17, PageID.254 (citing ECF No. 17-14).) In reply, Aoun says that "the vote was defective" under state law because it "had

---

[6] Aoun appears to make one argument that accounts for the relevant Michigan constitutional language: that the constitution's incorporation of "any other qualification required under this constitution or by law" refers only to "statutes entered by the Michigan legislature and not local ordinances." (ECF No. 13, PageID.163; *see id.* ("The reference to constitution and other laws does not include local ordinances."); ECF No. 15-2; PageID.225–226 (state trial court transcript) ("[Y]es, I'm talking a narrower approach, but if they wanted to say charter, if they wanted to say ordinance, . . . if they wanted to deal with the city or a local government, that's what they would have put in there.").) But that argument is completely undeveloped and unclear. And Aoun provides no support for such a narrow reading of the word "law." What is more, even if his interpretation held water, the Michigan Home Rule Act is a "law" the way Aoun understands it, and it in turn incorporates city ordinances.

16

several proposals bundled together so that the voter was voting for all proposals or none." (ECF No. 18, PageID.350 (citing Mich. Comp. Laws § 117.21(3))); *see* Mich. Comp. Laws §§ 117.20–.24. But that is irrelevant to the instant motion; any procedural defects surrounding the proposed charter amendment have no bearing on the constitutionality of the existing charter provision, nor do they indicate that the citizens of Dearborn voted to amend the felony restriction.

Finally, Aoun fails to establish a likelihood of success on the merits on his Fourteenth Amendment due process claim. (*See* ECF No. 13, PageID.174 ("Nor is there a mechanism for review or appeal, compounding the due process violation.").) Aoun must show that he was "deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause" to make out a procedural due process claim. *Tomaszczuk v. Whitaker*, 909 F.3d 159, 164 (6th Cir. 2018) (alteration in original). He establishes neither. "Longstanding Michigan and federal law confirm that there is no property interest in holding public office." *Fouts II*, 97 F.4th at 469 (citing *Taylor v. Beckham*, 178 U.S. 548, 576 (1900); *People v. Smith*, N.W.2d 718, 726 (Mich. 2018)). Nor does Aoun have a liberty interest in running for or holding public office. *Id.* ("Given our prior holding that running for public office does not constitute a fundamental right under the Constitution, Fouts similarly has no liberty interest impacted by the term-limit amendment."). Thus, Aoun has no likelihood of success on his due process challenge. *See Fouts I*, 2023 U.S. App. LEXIS 26448, at *10 ("Because Plaintiff has not argued that he has a liberty or property interest in the ability to run for mayor, he likely cannot prevail on his due process challenge.").

17

"Because [Aoun] hasn't shown any likelihood of success on [his] claim, []he can't establish that []he is likely to suffer an irreparable injury absent a preliminary injunction. Nor can []he show that the other preliminary-injunction factors weigh in h[is] favor. Thus, [Aoun] is not entitled to a preliminary injunction." *Conyers*, 2022 WL 2081475, at *4 (citing *Daunt v. Benson*, 956 F.3d 396, 422 (6th Cir. 2020)); *see also Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) ("[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.").

### III.

For the reasons above, the Court DENIES Aoun's emergency motion for preliminary injunction (ECF No. 13).

SO ORDERED.

Dated: June 20, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
